Page(s) 46

Attach A-F

RECEIPT NUMBER

515115

## ORIGINAL

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SCOTT A. CHAPPELLE,

      Plaintiff,

v

JEFFERSON BEACH YACHT SALES, INC.,
a Michigan corporation, **SUNSEEKER
USA, INC.**, a foreign corporation, and
**SUNSEEKER INTERNATIONAL LIMITED**,
a foreign corporation,

      Defendants.

```
JUDGE : Duggan, Patrick J.
DECK  : S. Division Civil Deck
DATE  : 10/13/2004 @ 16:34:01
CASE NUMBER : 2:04CV74012
CMP SCOTT A CHAPPELLE V
JEFFERSON BEACH YACHT SALES INC
ET AL DH
```

MAGISTRATE JUDGE PEPE

U S DIST COURT CLERK
EAST DIST MICH
DETROIT

FILED
04 OCT 13 P4:40

---

**THOMAS J. MCGRAW** (P48817)
**SEAN M. WALSH** (P48724)
**PAULA JOHNSON-BACON** (P55862)
COX, HODGMAN & GIARMARCO, P.C.
Attorneys for Plaintiff
101 W. Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
(248) 457-7000

---



COX
HODGMAN &
GIARMARCO, P.C.
Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fox (248) 457-7001

---

## COMPLAINT

---

**NOW COMES** Plaintiff Scott A. Chappelle ("Chappelle"), by his attorneys, Cox, Hodgman & Giarmarco, P.C., and states for his Complaint as follows:

**The Nature of the Action**

     1.    This action arises out of Defendant Jefferson Beach Yacht Sales, Inc.'s delivery of a non-conforming, defective Sunseeker yacht to Plaintiff Chappelle, as well as each Defendants'

breach of the express and implied warranties accompanying the sale of the yacht to Plaintiff Chappelle.

**The Parties**

2.      Plaintiff Chappelle is a resident of the City of East Lansing, Ingham County, Michigan.

3.      Defendant Jefferson Beach Yacht Sales, Inc. (hereinafter "Jefferson Beach"), is a Michigan corporation having its principal place of business in the County of Macomb, State of Michigan, and, at all relevant times, was engaged in the sale, distribution, and importation of watercraft and related equipment.

4.      Jefferson Beach's registered agent for service of process is Mr. Joseph W. Thomas of the law firm of Driggers, Schultz & Herbst, PC, 2600 W. Big Beaver, Suite 550, Troy, MI 48084.

5.      Jefferson Beach is authorized to sell and service Sunseeker International, Ltd. and/or Sunseeker USA, Inc. yachts.

6.      Defendant Sunseeker International Limited ("Sunseeker International") is a corporation organized under the laws of the United Kingdom and was formerly known as Sunseeker International (Boats) Limited Corporation.

7.      Sunseeker International has its principal place of business located at 27 West Quay Rd., Poole, Dorset,  BH15 1HX, United Kingdom.

8.      Upon information and belief, Defendant Sunseeker USA, Inc. (hereinafter ("Sunseeker USA") is a subsidiary of Sunseeker International and is a foreign corporation

2

engaged in the design, manufacture, sale, distribution, and/or importing of watercraft and related equipment.

9.     Sunseeker USA's principal place of business is located at Lauderdale Marine Center, 2001 S.W. 20th Street, No. 106B, Ft. Lauderdale, Florida.

10.     Upon information and belief, Sunseeker USA administers warranty service claims on behalf of Sunseeker International in the United States.

**Jurisdiction and Venue**

11.     Plaintiff's claims, in part, arise under the Magnuson-Moss Warranty Act, hereinafter referred to as the Warranty Act, 15 U.S.C. §2301, et seq., and therefore, jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331.

12.     Plaintiff's state law claims arise under the same set of operative facts as its Warranty Act claim, and therefore, this Court may exercise pendent or ancillary jurisdiction over those claims.

13.     Defendant Jefferson Beach is a resident of the Eastern District of Michigan for purposes of venue and a substantial portion of the facts and circumstances giving rise to this action took place in this District, and therefore, venue is proper in this Court.

14.     Finally, the amount in controversy exceeds $75,000, exclusive of interest and costs.

**The Sales Contract**

15.     On April 10, 2003, Plaintiff Chappelle purchased a new 2003 Sunseeker Predator 68 yacht (the "2003 Predator") from Jefferson Beach for approximately $2 million. A copy of

3

the "Sales Contract" is attached as **Exhibit A.**

16.     On April 12, 2003, the Sales Contract was amended to provide, in pertinent part, that time was of the essence and that Jefferson Beach would deliver the 2003 Predator, "*complete as agreed* including electronics + owners alterations per 4-12-03 meeting, full fuel." **Exhibit B.**

17.     At that April 12, 2003 meeting, Jefferson Beach promised Plaintiff Chappelle that it would deliver a complete and conforming 2003 Predator that would be fit for the purpose communicated by Plaintiff Chappelle.

18.     In fact, Jefferson Beach promised that the 2003 Predator would be perfect, that it would be fit for the particular purpose communicated by Chappelle and that Jefferson Beach would assume responsibility for any and all defects that Chappelle discovered after delivery.

19.     Chief among the seller's promises was its promise that it would deliver an operative, seaworthy vessel.

20.     The Sales Contract, as amended, is a contract for the sale of goods, and therefore, governed by the Uniform Commercial Code as adopted by Michigan.

21.     The 2003 Predator is a complex good, and the defects later discovered by Chappelle were not readily visible at the time of delivery.

**Sunseeker Warranty**

22.     The 2003 Predator was designed, manufactured and warranted by Sunseeker USA and/or Sunseeker International.  A copy of the Sunseeker warranty is attached as **Exhibit C.**

4

COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

### The 2003 Boating Season

23.     Jefferson Beach delivered the 2003 Predator to Plaintiff Chappelle on or about June 15, 2003.

24.     Shortly after delivery, the 2003 Predator began to exhibit chronic operating defects.

25.     Chief among those defects is and has been the chronic failure of the diesel engines installed in the 2003 Predator by Sunseeker International and/or Sunseeker USA.

26.     Plaintiff has had the 2003 Predator serviced by Jefferson Beach, Sunseeker authorized agent and dealer, repeatedly since the 2003 Predator was first launched in May of 2003.

27.     During the 2003 boating season, Jefferson Beach attempted to repair the 2003 Predator on at least five separate occasions.

28.     On each instance, the primary complaints were related to the failure of the engines.

29.     Jefferson Beach itself created a chronology of the engine service problems between May of 2003 and September of 2003 and sent it to Sunseeker.  A copy of Jefferson Beach's chronology is attached as **Exhibit D.**

30.     Despite the many attempted repairs by Jefferson Beach and its repeated promises to properly repair the 2003 Predator, the vessel continues to suffer chronic engine failure.

31.     Plaintiff Chappelle has used the 2003 Predator on only six (6) occasions over the 2003 and 2004 boating season without mechanical failure.

5

32.    On each of the other 24 attempts, the 2003 Predator failed due to engine trouble.

33.    Most recently, Jefferson Beach, together with mechanics from the engine manufacturer in Germany, spent over one week working on the 2003 Predator; however, on October 7, 2004, just two weeks later, the 2003 Predator again broke down, this time in the middle of Lake Michigan.

34.    Plaintiff Chappelle was forced to idle back to shore with the 2003 Predator belching smoke and operating at no more than 1400 rpm's.

35.    Defendants have been unable to repair the engine problems despite their repeated promises to do so.

36.    According to the manufacturer of the engines, the engine models selected by Sunseeker USA and/or Sunseeker International are too underpowered to drive a vessel the size of the 2003 Predator.

37.    As it stands, Chappelle has paid nearly $2 million for a vessel that is unusable, particularly in open water.

**Chappelle's Revocation of Acceptance**

38.    Because the 2003 Predator is a complex good and because Plaintiff Chappelle relied on Defendants promise to repair the vessel in the event of any defects, Plaintiff Chappelle was entitled to an extended period of time in which to accept or reject.

39.    Nonetheless, on July 26, 2004, Plaintiff Chappelle notified Defendants that the 2003 Predator failed to conform to the parties' contract and to Defendants' express and implied

6

warranties, and therefore, he rejected the 2003 Predator. **Exhibit E.**

40.    Plaintiff Chappelle also notified Defendants that, to the extent his past conduct were deemed to have constituted acceptance, that acceptance was revoked. **Exhibit E.**

41.    Finally, Plaintiff Chappelle demanded that Jefferson Beach either refund the purchase price or replace the defective 2003 Predator with a vessel of equal value. **Exhibit E.**

42.    Defendant Sunseeker USA and Sunseeker International did not respond to Plaintiff Chappelle July 26, 2004 notice; however, Jefferson Beach did respond and refused to refund the purchase price and instead promised to:

    A.    Provide Plaintiff Chappelle with an additional five (5) year extended warranty; and

    B.    Repair the engines once and for all.

43.    Jefferson Beach's efforts to repair the 2003 Predator once again failed, and Plaintiff Chappelle was once again stranded in open water on the defective yacht.

44.    Plaintiff Chappelle, therefore, reiterated his rejection of the 2003 Predator by e-mail dated October 10, 2004. A copy of Plaintiff Chappelle's e-mail is attached as **Exhibit F.**

## COUNT I – ALL DEFENDANTS
## BREACH OF WRITTEN WARRANTY UNDER
## MAGNUSON-MOSS WARRANTY ACT

45.    Plaintiff hereby restates and realleges Paragraphs 1 through 44 as though fully set forth herein.

46.    Plaintiff is a consumer as defined in the Warranty Act.

COX
HODGMAN &
GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

47.     Jefferson Beach, Sunseeker USA and Sunseeker International are all suppliers and warrantors as defined by the Warranty Act.

48.     The 2003 Predator is a consumer product as defined in the Warranty Act.

49.     The 2003 Predator was manufactured, sold and purchased after July 4, 1975.

50.     Defendants each gave express, written warranties as defined in the Warranty Act. Exhibits A, B and C.

51.     Jefferson Beach is an authorized dealer/agent of Sunseeker USA and/or Sunseeker International and is designated to perform repairs under the warranties.

52.     Defendants' repeated failure to repair the defects described above, including the failure to honor the written warranties, constitutes a breach of the written warranties by Defendants and is actionable under the Warranty Act, 15 USC 2310(d)(1) and (2).

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendants:

A.      Refunding the purchase price paid by Plaintiff for the 2003 Predator and awarding Plaintiff Chappelle damages;

B.      Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C.      Such other relief the court deems just and appropriate under the circumstances.

### COUNT II – ALL DEFENDANTS
### BREACH OF IMPLIED WARRANTY UNDER
### MAGNUSON MOSS WARRANTY ACT

53.     Plaintiff hereby restates and realleges Paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.     The above described actions on the part of Defendants constitute a breach of the implied warranties of merchantability and fitness for a particular purpose in violation of the Warranty Act 15 USC 2301(7), 2308, 2310(d)(1) and (2).

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendant:

A.     Refunding the purchase price paid by Plaintiff for the 2003 Predator and awarding Plaintiff Chappelle damages;

B.     Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C.     Such other relief the court deems just and appropriate under the circumstances.

### COUNT III – JEFFERSON BEACH
### BREACH OF SALES CONTRACT

55.     Plaintiff hereby restates and realleges Paragraphs 1 through 54 of the Complaint as though fully set forth herein.

56.     The Sales Contract, together with the April 12, 2003 amendment, constitutes a binding contract for the sale of goods between Jefferson Beach and Plaintiff Chappelle. **Exhibits A and B.**

57.     Plaintiff Chappelle performed his obligations under the parties contract by paying the full sales price, but Jefferson Beach materially breached the contract by failing to deliver conforming goods.

58.     Indeed, the 2003 Predator is a defective, non-conforming good, and Plaintiff properly rejected the 2003 Predator by letter dated July 26, 2004, and again by e-mail dated October 10, 2004. **Exhibits E and F.**

COX
HODGMAN &
GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

59.    To the extent Plaintiff Chappelle were deemed to have accepted the 2003 Predator, he did so without discovering the above defects as they were not readily ascertainable and in reliance on Defendants' promise to repair defects.

60.    To the extent Plaintiff Chappelle were deemed to have accepted the 2003 Predator, he properly revoked that acceptance by letter dated July 26, 2004, and again by e-mail dated October 10, 2004.  **Exhibits E and F.**

61.    Plaintiff Chappelle offered Jefferson Beach numerous attempts to cure the defects; however, despite multiple attempts, Jefferson Beach failed to seasonably cure.

62.    The defects in the 2003 Predator substantially impair the value of the 2003 Predator.

63.    Jefferson Beach refused to refund the purchase price and the incidental and consequential damages incurred by Plaintiff, and therefore, Plaintiff Chappelle has been damaged.

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendant:

A.    Refunding the purchase price paid by Plaintiff for the 2003 Predator and awarding Plaintiff Chappelle the incidental and consequential damages incurred as a result of Jefferson Beach's breach;

B.    Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C.    Such other relief the court deems just and appropriate under the circumstances.

10

## COUNT IV – ALL DEFENDANTS
## BREACH OF EXPRESS WARRANTIES

64.     Plaintiff hereby restates and realleges Paragraphs 1 through 63 of the Complaint as though fully set forth herein.

65.     Plaintiff is a buyer under the Michigan Uniform Commercial Code, MCLA 440.2103.

66.     Defendants are sellers under the Michigan Uniform Commercial Code, MCLA 440.2103.

67.     The 2003 Predator constitutes goods under the Michigan Uniform Commercial Code, MCLA 440.2105.

68.     Plaintiff's purchase of the 2003 Predator was accompanied by express warranties, both written and oral, offered by Defendants which were part of the basis of the bargain of the contract upon which Plaintiff relied.

69.     Defendants Sunseeker USA and/or Sunseeker International warranted that if any defects were discovered within certain periods of time, Defendants would repair the 2003 Predator free of charge under specific terms as stated in the express warranty.  **Exhibit C.**

70.     Jefferson Beach also promised, both orally and in writing, to deliver the 2003 Predator in perfect condition and that it would repair any defects discovered by Plaintiff after delivery.  **Exhibit B**.

71.     After delivery, Plaintiff discovered the defects described above and repeatedly notified Defendants and provided them with opportunity to seasonably repair the 2003

11

Predator.

72.     Plaintiff has reasonably met all obligations and preconditions as provided in the express warranty.

73.     Defendants have failed to repair the 2003 Predator, which remains defective and non-conforming.

74.     Even though the Sunseeker warranty purported to limit Plaintiff's remedies, the 2003 Predator's defects have rendered that limitation ineffective because the warranty failed of its essential purpose.

75.     The 2003 Predator continues to contain defects which substantially impair the value of the vessel to the Plaintiff.

76.     These defects could not reasonably have been discovered by the Plaintiff at the time of delivery.

77.     Defendants induced Plaintiff's acceptance of the 2003 Predator by agreeing, by means of the express warranties, to remedy any defects within a reasonable time, including those defects which had not been or could not have been discovered prior to acceptance.

78.     As a result of its many defects, Plaintiff has lost faith and confidence in the 2003 Predator and cannot reasonably rely upon the vessel for the ordinary or particular purpose for which it was intended.

79.     If the Court finds that revocation and/or rejection was improper, then, as of the date of revocation, the 2003 Predator was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

12

80. Therefore, Plaintiff is entitled to damages for breach of warranty calculated by the difference between the value of the goods accepted and the value they would have had if they had been as warranted measured at the time and place of acceptance .

81. Defendants have refused Plaintiff's demands and have refused to provide Plaintiff with the remedies to which Plaintiff is entitled pursuant to MCLA 440.2313 and MCLA 440.2711, 440.2714, and 440.2715.

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendants:

A. Awarding Plaintiff Chappelle damages in the amount of the purchase price paid by Plaintiff for the 2003 Predator together with incidental and consequential damages incurred as a result of Defendants' breach;

B. Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C. Such other relief the court deems just and appropriate under the circumstances.

## COUNT V
## BREACH OF IMPLIED WARRANTIES

82. Plaintiff hereby restates and realleges Paragraphs 1 through 81 as though fully set forth herein.

83. Defendants are merchants.

84. The 2003 Predator was subject to implied warranties of merchantability and fitness for a particular purpose running from Defendants to Plaintiff.

85. The 2003 Predator was not fit for the ordinary purpose for which such goods are used and was certainly not fit for the specific purpose intended by Plaintiff.

13

COX
HODGMAN &
GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fox (248) 457-7001

86.    The defects and problems herein described rendered the 2003 Predator unmerchantable and certainly unfit for the purpose Plaintiff intended.

87.    Defendants have failed to adequately remedy the defects in the 2003 Predator and it remains unmerchantable and unfit for its intended purpose.

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendants:

A.    Awarding Plaintiff Chappelle damages in the amount of the purchase price paid by Plaintiff for the 2003 Predator together with incidental and consequential damages incurred as a result of Sunseeker USA's and Sunseeker International's breach;

B.    Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C.    Such other relief the court deems just and appropriate under the circumstances.

## COUNT VI
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

88.    Plaintiff hereby restates and realleges Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

89.    Plaintiff is a person within the meaning of MCLA 445.902(c).

90.    Defendants are engaged in trade or commerce as defined in MCLA 445.902(d).

91.    Defendants have engaged in unlawful, unfair, unconscionable, or deceptive methods, acts or practices including but not limited to:

A.    Representing to Plaintiff that the 2003 Predator and the warranties had characteristics, uses, benefits, qualities and standards which they did not actually have;

14

B.    Representing to Plaintiff that the 2003 Predator and the warranties were of a particular quality and standard and they were not;

C.    Failing to refund the purchase price paid by Plaintiff for the 2003 Predator;

D.    Misrepresenting the contents of the written agreements covering the the 2003 Predator and failing to provide the promised benefits to Plaintiff;

**WHEREFORE**, Plaintiff Chappelle requests judgment against Defendants:

A.    Awarding Plaintiff Chappelle damages in the amount of the purchase price paid by Plaintiff for the 2003 Predator together with incidental and consequential damages incurred as a result of Defendants' conduct;

B.    Awarding Plaintiff Chappelle costs, interest and actual attorney fees; and

C.    Such other relief the court deems just and appropriate under the circumstances.

COX, HODGMAN & GIARMARCO, P.C.

By:    _____
THOMAS J. MCGRAW (P48817)
SEAN M. WALSH (P48724)
PAULA JOHNSON-BACON (P55862)
Attorneys for Plaintiff
101 W. Big Beaver Road, Tenth Floor
Troy, MI  48084-5280
(248) 457-7000

Date:  October 13, 2004

15

74012

Duggan /SDP

JS 44 11/99    **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: ___MACOMB___

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFFS

SCOTT A. CHAPPELLE

## DEFENDANTS

JEFFERSON BEACH YACHT SALES, INC., SUNSEEKER USA, INC. AND SUNSEEKER INTERNATIONAL LIMITED

(b) County of Residence of First Listed ___INGHAM___
26065

County of Residence of First Listed ___MACOMB___

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) Attorney's (Firm Name, Address, and Telephone Number)
SEAN M. WALSH (P48724)
COX, HODGMAN & GIARMARCO, P.C.
101 W. Big Beaver Road, Tenth Floor
Troy, Michigan 48084   (248) 457-7000

Attorneys (If Known)
PATRICK J. DUGGAN
MAGISTRATE JUDGE PEPE

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE / PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury- Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21: 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | ☐ 320 Assault, Libel And Slander | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 690 Other | ☐ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | ☐ 385 Property Damage Product Liability | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **Habeas Corpus:** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | ☐ 530 General | **FEDERAL TAX SUITS** |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7609 |
| | | ☐ 555 Prison Condition | | |

890

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 (specify)
- Transferred from another district
- ☐ 6 Multi district Litigation
- Appeal to District
- ☐ 7 Judge from Magistrate

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    $ DEMAND    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  10|13|04    SIGNATURE OF ATTORNEY OF RECORD  Sean M. Wa

# PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?

     ☐ Yes
     ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

     ☐ Yes
     ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :





*Jefferson Beach Yacht Sales, Inc.*



24400 Jefferson
St. Clair Shores, MI 48080
**(810) 778-7600 • Fax: (810) 778-4766**
www.JBYS.com • e-mail: sales@jbys.com

# SALES CONTRACT

Date: 4/10/03

Customer's Name: MR. SCOTT A. CHAUVETTE
_____ Print

Address: 514 MAC AVE. SUITE 100    EAST LANSING    MI    48823
          Street                        City              State      Zip

Telephone: 517-336-4400
           Wk#                  Hm#                          Fax#

03    SUNSEEKER    PREDATOR 68-TWIN 1500
Year    Manufacturer        Model            Engine              Stock #

Accessories _____    Sales Price $ 1,850,000.00
CHAUVETTE AS LISTED IN
EXHIBIT "A"
SEE EXHIBIT "B"
LETTER OF CONFIDENTIALITY.

Trade Value and Description
Subject to Survey and approval of condition by Jefferson Beach Yacht
Sales, Inc., as of closing date. (See customer Trade Acknowledgement
Document.)

Total Before Tax .................... $ 1,850,000
Sales Tax ........................... $  111,000
Total Delivered Price of Boat ......... $
Registration Fees & Transfer .......... $    442
Title ............................... $
Grand Total ......................... $ 1,961,453
Less Deposit ........................ $  150,000

THE TERMS AND CONDITIONS OF THIS SALES CONTRACT ARE SET FORTH BELOW. CUSTOMER'S SIGNATURE ON THIS SALES CONTRACT SHALL CONSTITUTE ASSENT TO THE TERMS AND CONDITIONS CONTAINED HEREIN.

This sales contract constitutes the entire agreement between the parties hereto and is not valid unless approved and executed by JEFFERSON BEACH YACHT SALES, INC.

JEFFERSON BEACH YACHT SALES, INC. is not obligated under this sales contract to transport the boat to customer. ~~Customer agrees to take delivery of the boat at whatever place JEFFER-SON BEACH YACHT SALES, INC. so designates.~~ ST CLAIR SHORES.

This sales contract is subject to survey and is contingent upon strikes, accidents and other delays unavoidable or beyond our control.

JEFFERSON BEACH YACHT SALES, INC. (SELLER), MAKES NO WARRANTY OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED; AND ALL IMPLIED WARRANTIES OF MER-CHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED BY JEFFERSON BEACH YACHT SALES, INC.

If this is a used boat sale then *Customer acknowledges that it has had sufficient opportunity to inspect the boat which is the subject of the sale. Customer acknowledges that it is satisfied with the condition of the vessel and inspection reports which Customer has obtained or received in connection with the condition of the vessel, if any. Customer acknowledges that unless otherwise contained in this Sales Contract, there are no express warranty(s) made by the Seller with respect to the boat. FURTHER, ANY STATUTORY OR OTHER WARRANTY, INCLUDING WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, CONDITION, DESCRIPTION, OR ANY REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE STATE, QUALITY OR FITNESS OF THE VESSEL ARE HEREBY EXCLUDED.

No salesman, employee, agent or representative of JEFFERSON BEACH YACHT SALES, INC. is authorized to make any warranty of any kind whatsoever.

Customer's exclusive remedy and (SELLER's) limit of liability for any and all losses or damages resulting from nonconforming goods or tender, or from any other cause, including but not limited to, liability for negligence, shall be for the contract price of the particular boat with respect to which the losses or damages occurred. Any right of the Customer to consequential and incidental damages is excluded. * JEFFERSON BEACH TO SERVICE AT BAY HARBOR, EVERY BUYER ( ENTITLED TO ANY & ALL MANUFACTURES WARRANTIES.

THIS ORDER IS NOT CANCELABLE. NO DEPOSITS REFUNDED.

Customer's Signature _____

Salesman    NICK WAGNER

Accepted by
Jefferson Beach Yacht Sales, Inc.

By _____
                          (Gregory P. Krueger)



**Jefferson Beach Yacht Sales**



Main Office
24400 Jefferson
St. Clair Shores, MI 48080
(586) 778-7600
Fax: (586) 778-0742

Grand Haven Office
Grand Isle Marine
One Grand Isle Drive
Grand Haven, MI 49417
(616) 842-7639
Fax: (616) 842-7649

www.jbys.com  e-mail: nwarner@jbys.com

---

### Prepared Specially for Mr. Scott Chappelle
## 2003 Sunseeker Predator 68
#### Exhibit "A"

| | |
|---|---:|
| **T-MAN 1500 HP – D2842 LE 409** | **$2,495,000** |
| Remote Searchlight – Sanshin Twin Beam | 2,277 |
| Furuno Navnet 1943C 10.4" Color LCD Radar/plotter w/GPS antenna GP310B in lieu of std | 5,723 |
| Fresh water deck wash with outlets fwd & aft including deck wash hose kit with additional outlet in garage | 1,398 |
| Aircon vents behind helm seats to be white in cockpit (Instruction) | 0 |
| Glendinning Cablemaster | 4,323 |
| Air Conditioning in deck saloon | 35,560 |
| Gaganeau electric BBQ grill in wet bar in lieu of std grill | 367 |
| Alpine – Additional pair of Alpine Marine 2 way cockpit speakers STM-6666 (for cockpit stereo with additional amplifier) | 1,032 |
| Dimmer switches on interior lighting in Saloon | 3,118 |
| 110V outlet in wetbar locker in cockpit | 183 |
| 20" Sharp LCD screen TV in lieu of std in aft cabin | 3,878 |
| Air-conditioning in crew cabin | 9,184 |
| **Prep only** for KVH Tracphone and KVH TracVision | 1,607 |
| Panasonic Plasma 42" TV w/Panasonic VCR linked to TV for TV tuner with slide back cherry doors in saloon | 15,132 |
| **Prep only** for watermaker | 1,145 |
| 65 gallon holding tank | 4,776 |
| Racor fuel filters in lieu of Separ (n/c) | 0 |
| Washer/dryer in locker outside port head & under companionway steps in aft cabin | 2,133 |
| White face panel icemaker in cockpit (Instruction) | 0 |
| Safe – 2 brick with combination lock in aft cabin | 712 |
| An additional 6mm clearance is required under all doors (Instruction) | 0 |
| Magnetic door stoppers on all doors where possible in fwd cabin (Instruction) | 0 |
| Teak first step to side decks | 521 |
| Teak cabin stair treads in saloon | 2,089 |
| Roman blinds in aft cabin | 2,410 |
| Roman blinds in starboard guest cabin | 1,250 |
| Crew Cabin | 15,730 |
| Canvas package | 3,777 |
| Day toilet | 15,135 |
| Freight & Prep | 15,000 |
| **TOTAL Price** | **$2,643,460** |

'our special price   $1,850,000

**Additions as of 4/24/03**

| | |
|---|---:|
| Alpine 6 Disc Multi CD Changer CHA s624 to go w/std CD/Radio | 957 |
| Sprung mattress for double bed | 1,577 |
| Sprung mattress for master berth | 1,577 |
| Sprung mattress for single berths | 1,953 |
| Upgrade Plotter to Northstar 962 (Per Filipelli's Quote) from NavNet Unit (price difference) | 6,678 |
| Raytheon 4000M Night Vision w/o monitor (will be interfaced with NavNet monitor) | 7,495 |
| Installation of night vision | n/c |
| Furuno Video Interface Kit for 10.4" Nav/Net Display | 345 |
| *Cockpit throw pillows (6 navy & white stripe) | 600 |
| *Custom made cushions for chairs with backs, four navy and white stripe | 1,200 |
| *Custom storage bags for all four chairs and table, solid navy | 150 |
| *Bow sun bathing cushion to be made of white vinyl w/mesh backing on underside | 3,500 |
| *S & I nautical structures adjustable chocks | 1800 |
| *Transom name "Miss Chrissy" in medium engine turn gold leaf w/navy border | |
| *Hailing Port "Bay Harbor, MI" in solid navy | 625 |
| *Four Barlow Tyrie teak folding chairs | 2,300 |
| *One Barlow Tyrie teak folding table | 500 |
| TOTAL | $1,881,257 |
| State of Michigan Sales Tax, Title, and Registration | 113,328 |
| TOTAL | $1,994,585 |
| Deposits 4/10/03 and 4/25/03 | -70,000 |
| Balance Due | **$1,924,585** |

      * Pricing are estimates ONLY!

~~It is also agreed that purchaser will pay floor plan interest of $283.56 per day starting May 12, 2003 until purchase is closed in full (Based on $1,800,000 @ 5.75% interest)~~


_____        _____
Scott Chappelle, Purchaser           Date


_____        _____
Sellers Agent                        Date



FILE: Myfiles:Addendum/Chappelle SS Predator 68 2003 NW



**Main Office**
24400 Jefferson
St. Clair Shores, MI 48080
(586) 778-7600
Fax: (586) 778-0742

## Jefferson Beach Yacht Sales



**Grand Haven Office**
Grand Isle Marine
One Grand Isle Drive
Grand Haven, MI 49417
**(616) 842-7639**
Fax: (616) 842-7649

www.jbys.com  e-mail: nwarner@jbys.com

# Letter of Confidentiality
### Exhibit "B"

Between
Purchaser:     Mr. Scott Chappelle
And
Seller:            Jefferson Beach Yacht Sales
                       Gregory P. Krueger, President
                       Nick Warner, Sales Representative

RE:              2003 Sunseeker Predator 68  # 1450368

If is agreed to be in the best interest of both parties that the selling price for the above referenced boat will remain in strict confidence.

_____         4-12-03
Scott Chappelle, Purchaser              Date

_____         _____
Gregory P. Krueger,                          Date
President, Jefferson Beach Yacht Sales

_____         4/12/03
Nick Warner, Sales Representative     Date

File:myfiles/boatpricing/quotes/chappelle SS Predator 68 2003 Nick



# Jefferson Beach Yacht Sales, Inc.
## www.jbys.com

### "Where You Buy With Confidence & Assured Service"

24400 Jefferson
St. Clair Shores, MI 48080
(586) 778-7600





Main Office
24400 Jefferson
St. Clair Shores, MI 48080
(586) 778-7600
Fax: (586) 778-0742

# *Jefferson Beach Yacht Sales*

Grand Haven Office
Grand Isle Marine
One Grand Isle Drive
Grand Haven, MI 49417
(616) 842-7639
Fax: (616) 842-7649

www.jbys.com  e-mail: nwarner@jbys.com

## Addendum to Sale

April 10, 2003

| | |
|---|---|
| Agreed base price including freight, additional Furuno Nav/Net w/GPS antenna, Satellite TV dome with one receiver and install customer supplied night vision . (plus tax) | $1,850,000 |
| Non-refundable deposit due now | -50,000 |
| Balance  due no later than April 30, 2003 ✱ | $1,800,000 |

Delivery to take place some time between May 31, 2003 – June 7th, 2003

_____
Scott Chappelle, Purchaser

4-12-03
Date

*Nick Warner*
Nick Warner, Sales Representative

4/12/03
Date

✱ TIME OF THE ESSENSE BARRING EVENTS + ACTS OF GOD OUTSIDE THE CONTROL OF SELLER.

✱ SALE SUBJECT TO DONATION OF OWNER 52 TIARA EXPRESS ($600,000 CASH BACK AND FAIR MARKET VALUE DEDUCTION OF AT LEAST $300,000).

✱ BUYER HAS RIGHT TO CLOSE 2 WEEKS AFTER APRIL 30 HOWEVER UNDERSTANDS BOAT MAY NOT SHIP UNTIL CLOSED.

✱ BUYER TO TAKE DELIVERY IN ST. CLAIR SHORES MICHIGAN.

✱ BOAT TO BE DELIVERED, COMPLETE AS AGREED INCLUDING ELECTRONICS + OWNERS ALTERATIONS PER 4-12-03 MEETING, FULL FUEL.



# TERMS & CONDITIONS

# SUNSEEKER
# USA INC.



**Sunseeker USA Inc.**

LAUDERDALE MARINE CENTER
2001 SW 20TH Street
# 106B FT Lauderdale
Florida 33315
USA

# USA INC.

# CERTIFICATE SCHEDULE

The one year warranty may be transferred to a new owner as detailed in item 6 of the General Conditions. Please forward this new owner Registration Document, the new pre-delivery inspection as performed by the Sunseeker dealer, copies of the up to date Service Schedule and Registration Fee to Sunseeker USA Inc. at the above address.

It is in you interest to give the fullest details possible as this will enable us to process any claim with the minimum of delay.

## Client Details

Title *(Mr/Mrs/Miss/Doctor etc.)*

Forname(s)

Surname

Address

Postcode

Country

Telephone *(including codes)*

## Where will the boat be kept

Country

Town/Marina

## Type of berth

Marina    Private mooring    Swinging mooring    Dry berthed

☐              ☐                     ☐                    ☐

## Selling Agent

### Pre-delivery inspection number:

### Certificate Schedule Number:

SUI

### Date of warranty:

/        /

### Date of expiry:

/        /

## Boat Details

Sunseeker model:

Boat number:

Boat name:

## Engine Details

Engine type:

Engine number port:

Engine number stbd:

Engine number mid:

I certify that, to the best of my knowledge, the information given is correct and I have read and understood and agree to be bound by the terms and conditions of this policy. When complete this form should be returned to Sunseeker USA Inc., for processing and any warranties to come into effect.

Owner's Signature:

Date:

See accompanying booklet for warranty conditions.
From time to time, organisations associated with Sunseeker USA Inc. may wish to mail information to you. If you would prefer not to receive this, please tick the box. ☐

Florida Corporation Number: P95000009089

Dear Boat Owner,

SUNSEEKER USA,INC.

## ONE YEAR LIMITED WARRANTY

Sunseeker USA Inc. have been commissioned to handle the administration of the new warranty package and we have pleasure in enclosing all the warranty documents.

Sunseeker USA Inc, Inc. offers one year warranty on most components and fittings on Sunseeker boats kept in United States territorial waters as defined in the Terms and Conditions.

**1) Certificate**
The Certificate in the front of the Terms and Conditions booklet must be completed in full ensuring that all questions are answered. This document consists of four copies and must be distributed as follows:-

| | |
|---|---|
| Top copy | - to Sunseeker USA Inc., to register that the boat has been handed to customer. |
| Second copy | - to be retained by seller. |
| Third copy | - retained by the customer as part of his Terms and Conditions. |

**2) Terms and Conditions**
This sets out the warranty coverage and procedures to validate any claim(s). This one year warranty does not affect your statutory rights.

**3) PDI form:-**
This document is to be completed in full, evidencing that a full pre-delivery inspection (PDI), has been carried out on the boat, immediately prior to delivery to the customer. Copies are then to be distributed, as defined in '1' above.

**4) Manufacturer's engine warranty cover:-**
This document is the manufacturer's warranty coverage for the engine(s).

**5) Letter of acceptance:-**
This document is to be signed by the customer confirming that they have received and understood their copy of the Term and Conditions and is to be forwarded to Sunseeker USA Inc., with the Certificate and PDI copy.

Sunseeker USA Inc.

1

# CONTENTS

2   Terms

2   Recovery of Vessel

2   Limit of Indemnity

2   Period of Warranty

2   Territorial Limits

2   Hull

3   General Conditions

4   Exclusions

6   Claims Procedures

6   Important

6   Jurisdiction

In this warranty the following expressions shall have the following meanings:

" Registered Owner " — The person shown on the certificate schedule of this warranty, or such person as notified pursuant to clause 6 (the transfer provision) of the General Conditions of this warranty.

" Breakdown " — An event which requires the repair or replacement within the terms and conditions of this warranty of any warranted part of the Vessel.

" Approved Sunseeker Dealer " — Any authorised distributor of Sunseeker USA, Inc. or such other boatyard as may be approved in writing by Sunseeker USA.

" Vessel " — The boat as shown on the Certificate Schedule of the Warranty.

" USA " — The United States of America.

" Sunseeker USA " — Sunseeker USA, Inc., - Lauderdale Marine Center 2001 SW 20TH Street # 106B FT Lauderdale

3

# GENERAL CONDITIONS

### 1.    Authorisation of claims

Any claims that the Approved Sunseeker Dealer has been authorised to do, including parts and labour are covered by the terms and conditions of this warranty and can be carried out without charge to the Registered Owner at the risk of an Approved Sunseeker Dealer. All claims need prior authorisation from Sunseeker USA Inc.

### 2.    Labour rates

Subject to clause '1' above labour which is to be executed under this warranty shall be carried out free of charge to the extent that it is carried out during normal working hours at a rate as defined by the manufacturers of the Vessel at the time the warranted work is executed - any hours that are deemed extraordinary will be the responsibility of the person giving instructions for such extraordinary hours and not Sunseeker USA Inc.

### 3.    Despatch of parts

Parts will be despatched to the Registered Owner or the Approved Sunseeker Dealer carrying out the repairs with the carriage charges to be the responsibility of the Registered Owner subject to the claim being approved by Sunseeker USA Inc. when at such time Sunseeker USA Inc. will look to reimburse any reasonable carriage costs incurred.

### 4   Responsibility of Registered Owner

The Registered Owner is responsible for:

a.      Ensuring the registration of Sunseeker USA Inc. cover being placed with Sunseeker USA Inc. within 30 days of date of handover of the Vessel along with sight of proof that the pre-delivery inspection has been carried out by the Approved Sunseeker Dealer.

b.      Ensuring that the Vessel is maintained by an Approved Sunseeker Dealer, Records of evidence of such maintenance lodged within 30 days with Sunseeker USA Inc. would expedite the claims but in any event evidence of such maintenance must be produced for inspection when claims are made.

c.      After a Breakdown promptly making the Vessel available to an Approved Sunseeker Dealer for repair or on request to an authorised representative of Sunseeker USA Inc.

d.      Taking precautions to prevent further damage to the Vessel after a Breakdown, Sunseeker USA Inc. shall not be liable for any further damage resulting from the continued use of the Vessel until it has been repaired to the satisfaction of the Approved Sunseeker Dealer.

e.      Ensuring that if the Vessel has to be recovered due to Breakdown that the recovery is done by an Approved Sunseeker Dealer, costs for such recovery to be borne by the Registered Owner.

### 5.    Availability

The Vessel warranty is available to Registered Owners in respect of their purchase of a Sunseeker vessel supplied by the Approved Sunseeker Dealer shown in the Certificate shedule.

### 6.    Transfer

The benefits hereunder can only be assigned subject to Sunseeker USA Inc. being notified in writing of such assignment and a registration fee of $100 US Dollars is paid and a pre-delivery/service inspection being carried out showing the condition of the Vessel and verifying that its service record is up to date at the date of changeover of ownership.

## TERMS

Sunseeker USA Inc., for the benefit of the Registered Owner, undertakes subject to the terms and conditions of this warranty to pay for repairs to, or in its sole discretion provide replacements for, any warranted part of the Vessel, within the period of warranty, which upon examination by an Approved Sunseeker Dealer is found to have failed in its mechanical action/and or to have ceased to function for its intended purpose by reason of defective workmanship or materials.

## RECOVERY OF VESSEL

Should the vessel break down whilst afloat the cost of bringing the Vessel back to the yard or marina of an Approved Sunseeker Dealer shall be the responsibility of the Registered Owner or the third party as noted.

## LIMIT OF INDEMNITY

The liability of Sunseeker USA Inc. in respect of any one claim or claims arising out of any one occurrence shall not exceed 10% of the retail value of the Vessel as listed in Sunseeker's price list current at the date the warranty is registered with Sunseeker USA Inc.

Any claims amounting to $100 US Dollars - or equivalent of the local currency in which the claim is made or less, excluding VAT or any similar applicable sales tax will not be considered under this warranty.

## PERIOD OF WARRANTY

The period of warranty is shown on the certificate schedule.

## TERRITORIAL LIMITS

USA territorial waters only and with the exception of areas that are in the opinion of Sunseeker USA Inc. would be dangerous for an Approved Sunseeker Dealer or persons nominated by them to enter such area.

## HULL

The cover extended to the hull/deck moulding is for 5 years and covers structural defects and gelcoat blistering only. Hulls which have not received an epoxy osmosis treatment at the factory (optional on some models) are not covered against gelcoat blistering if the hull is moored in fresh water (e.g. inland waterway or river) or if the hull is not taken out of the water from a saltwater berth for 2 months in every 12. Colour fading is not covered by this warranty and nor is the deterioration of any decals or special paintwork.

The cover that is given is also without prejudice to the terms and conditions of this warranty including without limitations other exclusions of this warranty as listed in pages 4 & 5 in particular 7) Wear and Tear 8) Intentional Acts 9) Maintenance 12) Towing of Ancillary Items 15) Other Warranty or Insurance - War Risks in Total and Nuclear and Special Risks in Total.

# EXCLUSIONS

**Sunseeker USA Inc. shall not be liable for;**

**1.   Self Assembly Limitation**

Any claim attributable to an error in the assembly of machinery or parts that are not installed by Sunseeker International (Boats) Limited are not covered under this warranty.

**2.   Owners Insurance Cover**

Where damage is caused to the Vessel or any equipment installed or attached to it and the Registered Owner has insured the Vessel in respect of such damage under a policy of marine insurance or otherwise, no cover shall be extended in respect of such damage under this warranty.

**3.   Warranted Cover by Third Party**

No liability shall be attached to this warranty in respect of any machinery part or parts more specifically insured or within another manufacturer's warranty period.

**4.   Preventive Maintenance**

The cost of establishing preventive maintenance procedures nor the cost of alterations, additions, improvement nor overhauls.

**5.   Consequential Loss**

Loss of use of the Vessel or any other consequential loss penalties for delay or detention or in connection with guarantees of performance or efficiency, recovery of Vessel including, without limitation, cost of accommodation travel or medical expenses.

**6.   Application of Tools Extraneous Damage**

Any claim attributable to the application of any tool or process during the course of maintenance inspection modification or overhaul.

**7.   Wear and Tear**

The cost of remedying or making good or loss solely due to wear and tear - gradual deterioration through lack of maintenance or lack of use or not using the Vessel to the manufacturer's instructions as defined in the manufacturer's manual - scratching or chipping of painted or polished surfaces - damage by water or gradual reduction in operating performances of any part where this can be reasonably considered to be due to wear and tear or deterioration commensurate with the age, hours of use or condition of the Vessel.

**8.   Intentional Acts**

Intentional act or neglect by the Registered Owner involving the imposition of any abnormal conditions, commercial use or timed completion trials or racing or being overdriven or any damage to hull or deck caused by collision with an object or incorrect lifting or laying up of Vessel ashore.

**9.   Maintenance**

Any claim attributable to the Vessel not having been serviced or inspected in accordance with any manufacturers recommended procedures.

**10.  Replacement Parts**

The cost of remedying making good or replacing: gas cylinders - batteries - curtains - upholstery    - bed linen - tonneau covers - boat covers - instrument covers - bimini tops - pictures - any other wall fixtures that form a cosmetic appearance - crockery - cutlery - glass - glassware - carpets - loose cushions - towels - warps - fenders - boat hooks - anchors - mosquito screens/nets - fire extinguishers - propellers - tool kits - tenders and any other secondary water propelled items - vinyls - windscreens - anodes - VHF - radars - auto pilots - satellite navigational equipment - chart plotters - or any other electronic/navigational equipment - bulbs - fuses - rubber bellows.

Or any other parts or items considered as expendable or which may require renewal periodically under normal operational conditions.

Any goods or parts thereof on which the manufacturers identifiable number or marks have been altered or from which such numbers or marks have been removed or any second-hand goods or parts thereof or components not approved by the manufacturer.

5

### 11. Damage from "Electrolysis"
Any damage from "electrolysis" is not covered under this warranty.

### 12. Towing of Ancillary Items
Any claim attributed to the Vessel towing or being towed by another vessel or ancillary objects or being overloaded or overdriven for the reason of towing.

### 13. Other Warranty or Insurance
Any matter leading to a claim under this warranty or consequence thereof which is claimable on other warranty or insurance.

### 14. Third Party Cover Liability
Loss or damage to a third party or their property.

### 15. War Risks
#### a. Invasions
Any consequence of war invasion acts of foreign enemies, hostilities (whether war be declared or not) war, rebellion, revolution, insurrection, military or usurped power confiscation or nationalisation or requisition or destruction of or damage to the Vessel by or under the order of any government or public or local authority.

#### b. Terrorist Acts
Any consequence of terrorist acts or civil commotion assuming the proportion of or amounting to a popular rising martial law or the act of any unlawfully constituted authority.

#### c. Loss or Damage of
Loss or destruction of or damage to the Vessel if located in a war torn area or loss resulting therefrom caused by or happening through or in consequence of civil commotion - any unlawful wanton or malicious act committed maliciously by a person or persons acting on behalf of or in connection with an unlawful association.

### 16. Nuclear and Special Risks
Loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising from nuclear risks or any consequential loss.

Any legal liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contaminations by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel radioactive toxic explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

Loss destruction or damage directly occasioned by pressure waves caused by aircraft or other aerial devices travelling at sonic or supersonic speeds or any other extraordinary events.

### 17. Engines and Transmissions
Although engines and transmissions are excluded from this warranty some manufacturers may provide their own additonal limited warranty to vessel owners. You should check with the engine and transmission manufacturers for information on additional warranties available for engines and transmission.

### 18. Late Claims
Any claim notified to Sunseeker USA Inc. more than seven days after the date of expiry of this warranty as shown on the Certificate Schedule.

### 19. Boat used for charter purposes

### 20. Parts specified by owner/dealer which do not appear in Sunseeker USA Inc. extras list

### 21. Parts supplied by owner/dealer

### 22. Any equipment on the XS2000 that has been damaged/broken

# CLAIMS PROCEDURES

1.   The Registered Owner shall notify the Approved Sunseeker Dealer and Sunseeker USA Inc. of a Breakdown when such Breakdown ought resonably to have been discovered or, if earlier, upon it being discovered and the Approved Sunseeker Dealer and/or, if requested by Sunseeker USA Inc., its authorised representative, be given the opportunity to examine the relevant machinery part or parts before they are removed from the operating location.

The Approved Sunseeker Dealer may require the relevant part or parts to be returned for examination by their own supplier or the manufacturer.

2.   If the Registered Owner wishes to make a claim hereunder he shall first contact the service department of the Approved Sunseeker Dealer with details. If he is instructed to return the relevant part or parts the carriage shall be borne by the Registered Owner unless or until the warranty claim is established.

3.   Where the Registered Owner is instructed to return relevant part or parts to the Approved Sunseeker Dealer or the manufacturer he shall pack the part or parts, properly mark the same in the case of parts with the identification numbers or description of the part from which they have been taken and despatch them as directed by the Approved Sunseeker Dealer.

4.   The Registered Owner shall in all cases identify himself with his Certificate Schedule number and produce a copy of such Certificate Schedule.

# IMPORTANT

It is not possible for Sunseeker USA Inc. to authorise any claims without issuing a claims authority number. No repairs may commence until explicitly authorised by means of such an authority number.

It is therefore essential that this number be recorded and quoted in all correspondence and repair invoices relating to the claim - liability will not be accepted for any repairs or replacements undertaken without such authority number.

It is not possible for Sunseeker USA Inc. to pay any claims whatsoever unless they have sight of any service records that they deem necessary under this warranty and that such records are complete to their satisfaction.

THESE WARRANTY TERMS AND CONDITIONS DO NOT AFFECT ANY STATUTORY RIGHTS WHICH THE REGISTERED OWNER MAY HAVE

# JURISDICTION

These terms and conditions shall be governed bv and constructed in accordance with English law and the parties irrevocably submit to the exclusive jurisdiction of the English courts to settle any disputes which may arise in connection with these terms and conditions.



**Scott Chappelle**

| | |
|---|---|
| **From:** | Jennifer Hillesheim [jhillesheim@jbys.com] |
| **Sent:** | Tuesday, May 18, 2004 4:12 PM |
| **To:** | sean.robertson@sunseeker.com |
| **Cc:** | Dave Ottenhoff; Scott Chappelle |
| **Subject:** | boat #1450368, eng. serial # stbd: 7010192134A201, Port:7010192133A201 |

Sean,

Here is the chronological order of events in regard to the engines noted above:

PORT: 7010192133A201

1)
5/30/03: Excessive black smoke occurred during throttle up and excessive soot on
the hull side aft exhaust.  Are these the correct injectors and ECU's for
these engines?

MAN's Response: Yes, Engine has updated components.

2) 9/3/03: Significant coolant leaks which require continuously adding of coolant.

3) 9/3/03:  Multiple oil leaks on turbo oil drain tubes and feed pipes.

Solution:  Reseal turbo oil feed pipes and replace cracked drain tubes.

4) 9/3/03:  Exhaust leaks at turbo housing:

Solution:    R & R turbo, reassembled with Silkolene #762 Sealer.  Replaced
air filter which was soot clogged.

5) 6/26/03: Straits Diesel checked the alarm systems causing both engines to reduce
to 1500 RPM's.  Checked high coolant temperature and low coolant
level.  (Didn't solve the problem, NPF.)

6)  9/15/03: Two coolant leaks at the turbos and multiple hose and pipe joints

Solution:      R & R primary and secondary turbos for anti-freeze leaking
into bilge and into exhaust.  Found exhaust turbo surface and
intermediate housing seal surface warped at waste gate area.  Also a
crack in waste gate area of manifold.

7) 9/3/03: Excessive Black Smoke

Solution:  Removed all injectors on both engines, replaced with updated
injectors from MAN.  Found broken bolt on port engine aft
intercooler, outboard side bracket bolt.  Found broken allan
bolt on port engine fwd intercooler, aft bolt on top of
intercooler.

1

5/3/04:  Low wot RPM's only 2295.  Problem started after injectors were changed
         from number 6025 to 6042's.  (Not claimed yet).

Solution: Replaced MAN ECU's

9) Port side turbo temp alarm is going off. (Damage report not yet submitted).


STBD ENG: 7010192134A201

1) 5/30/03: Excessive black smoke occurred during throttle up and excessive soot
            on the hull side aft exhaust.

MAN Response: Engine has updated components.


2) 9/3/03:  Exhaust leak at inboard turbo housing. MAN alarm "external reduced"?

3)  9/3/03: Coolant leaks at both small turbos.


Solution:  R & R turbo, reassembled with silkolene #762 Sealer.
           Replaced air filter which was soot clogged.  Replaced intermediate housing
           gaskets


4) 9/3/03:  Multiple oil leaks on turbo oil drain tubes and feed pipes.

Solution:  Reseal turbo oil feed pipes and replace cracked drain


5) 6/26/03: Straits Diesel checked the alarm systems causing both engines to reduce
            to 1500 RPM's.  Checked high coolant temperature and low coolant
            level.  (Didn't solve the problem, NPF.)

6) 9/3/03: Excessive Exhaust Smoke

Solution:      Removed all injectors on both engines, replaced with updated
aft                          injectors from MAN.  Found broken bolt on port engine
allan                        intercooler, outboard side bracket bolt.  Found broken
                             bolt on port engine fwd intercooler, aft bolt on top of
                             intercooler.


7) 5/3/04:  Engine vibration at idle and worse at 1400-1600 RPM's.  Also low WOT
            RPM's 2270.  Problem started after injectors were changed from number
            6025 to 6042's.

Solution:    Replace MAN ECU's


8) 5/3/04: Engine Vibration and hunting 150 RPM's at idle and worse at 1400-1600 RPM's:
Still exists


9) Turbo leaking exhaust stbd side: (No Damage Report Yet Submitted)

2

Jennifer R. Hillesheim
Service Administrator
Jefferson Beach Yacht Sales
586-778-7600 ext. 119
jhillesheim@jbys.com
www.jbys.com





COX,
HODGMAN &
GIARMARCO, P.C.

Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan 48084-5280

(248) 457-7000.
Fax (248) 457-7001
www.chglaw.com

Attorneys and Counselors at Law

DETROIT • LANSING • TROY

Sean M. Walsh
☎Direct Dial: (248) 457-7091
e-mail: swalsh@chglaw.com

John B. Alfs
Michael M. Antovski
Andrew T. Baran
Mary Elizabeth Barnes
Larry W. Bennett
Peter J. Bill
David A. Binkley
Basil M. Briggs
Robert A. Bryant
Thomas P. Cavanaugh
Kenneth B. Chapie
John C. Clark
Douglas C. Dahn
Randall A. Denha

Joseph F. Dillon
Julius H. Giarmarco
Kalman G. Goren
Gilbert Gugni
Bruce W. Haffey
William H. Heritage, III
Stephen J. Hitchcock
William D. Hodgman
William L. Hooth
William H. Horton
Elise V. Iafrate
Paula Johnson-Bacon
Kaveh Kashef
Daniel J. Kelly

J. Claibourne Kelly
Barry L. King
Salvatore J. LaMendola
Adam Levitsky
Roy A. Luttmann
George J. Mager, Jr.
Thomas J. McGraw
Brian J. McMahon
George D. Mercer
Charles Milne
Bradley S. Mitseff
Carl Mitseff
Thomas J. Mohan
G. Gus Morris

Timothy J. Mullins
Kevin M. Nalu
Christopher J. Nelson
Timothy R. Noonan
Joseph G. Odish
Joseph F. Page, III
Ryan Lee Perry
Dennis M. Rauss
Robert O. Romonolli
Kenneth J. Sachs
Michelle T. Thrasher
Thomas L. Treppa
Paul G. Wakefield
Sean M. Walsh

David B. Walters
Linda M. Watson
Matthew S. Weaver
Robert B. Webster
Richard A. Wonwoda
Marsha M. Woods
James P. Zavell

Of Counsel
Gilbert C. Cox, Jr.

July 26, 2004

Mr. Joseph W. Thomas
Driggers, Schultz & Herbst, PC
Registered Agent - Jefferson Beach Yacht Sales, Inc.
2600 W. Big Beaver, Suite 550
Troy, MI 48084

Re:   <u>Sunseeker Vessel No. 1450368</u>

Dear Mr. Thomas:

We represent Scott A. Chappelle with respect to his purchase of the above referenced Sunseeker International yacht from Jefferson Beach Yacht Sales, Inc. ("Jefferson Beach") on April 30, 2003, and write to you as its counsel and its registered agent. As Jefferson Beach is no doubt aware, this vessel has been plagued with serious engine problems from the date of its initial delivery, forcing Mr. Chappelle to forgo use of the vessel and expend considerable time and resources to address the chronic service issues experienced since delivery. On each instance, the primary complaints were related to the failure of the MAN Marine Diesel Engine, which interestingly is a model not recommended by the manufacturer for a vessel of this size.

Unfortunately, the engine problems still have not been repaired, and Mr. Chappelle continues to experience serious problems as the 2004 boating season is half over. As it presently stands, Mr. Chappelle has paid nearly $2 million for a boat that is unusable, particularly in open water, and fails to conform to the terms of the parties' agreement and the manufacturer's and seller's express and implied warranties.

Therefore, because the vessel is clearly a non-conforming good and does not conform to the express and implied warranties made by Jefferson Beach, Sunseeker and MAN, Mr. Chappelle hereby rejects the vessel or, to the extent his past conduct constituted acceptance, revokes his prior acceptance of the vessel as permitted under the Michigan Uniform Commercial Code.

Mr. Chappelle, therefore, demands that Jefferson Beach refund the purchase price of the vessel to Mr. Chappelle within 30 days of the date of this letter or, in the alternative, provide a suitable replacement yacht of equal value.  Of course, Mr. Chappelle will hold the vessel at its home berth in Bay Harbor, MI and make it available for Jefferson Beach to pick up at its convenience.

We sincerely hope that Jefferson Beach will agree to resolve this problem in an amicable and timely fashion; however, in the event that it refuses to refund the purchase price or to provide replacement goods, Mr. Chappelle will be forced to file a civil action based on his rejection or his revocation of acceptance, as well as the seller's and manufacturer's warranties, the Michigan Consumer Protection Act and the Federal Magnuson-Moss Warranty Act.

It is in everyone's best interest to quickly and amicably resolve this matter and we are anxious to know how Jefferson Beach would like to proceed.

Thank you for your anticipated cooperation.

Very truly yours,

Sean M. Walsh

cc:   Mr. Shawn Robertson, Sunseeker International Limited
      Mr. Dan Macri, MAN
      Sunseeker USA, Inc.
      Mr. Nick Warner, Jefferson Beach Yacht Sales, Inc.



## Sean M. Walsh

| | |
|---|---|
| **From:** | Scott Chappelle [scottc@strathmoredev.com] |
| **Sent:** | Sunday, October 10, 2004 6:36 PM |
| **To:** | dottenhoff@jbys.com; nwarner@jbys.com |
| **Cc:** | Kevin McGraw; Tom McGraw; Sean M. Walsh |
| **Subject:** | 68 Sunseeker |
| **Importance:** | High |

Nick,

As you are aware, on Thursday, October 7th, I started the trip to take my boat to Florida for the winter. After traveling approximately 80 miles, the starboard engine went down with a low coolant and low expansion tank pressure alarm. As I was trying to make it back to shore I received similar alarms on the port engine although I am not sure if this was related to the starboard engine. Both engines were limited to 1,400 rpm's which made returning to the nearest marina time consuming as well as dangerous. Further problems developed while returning including the starboard engine monitoring screen blacking out and large quantities of smoke coming out of the engine room wire manager. The smoke smelled like an electrical fire however I was unable to ascertain the origin.

It was also apparent that both engines were not performing the same. While I was monitoring my fuel consumption I noticed that the starboard engine was operating at a significantly higher percentage of load than the port. I'm not sure if this could be related to the leaks in the turbo charger found by David Ottenhoff the next day.

Needless to say, after having mechanics from MAN - Germany and Jefferson Beach Marina on the boat for over a week "making sure we were going to get it right" I was disappointed. I have come to the conclusion that the engines are irreparable and given the sad and ridiculous history of this boat, I have been deprived of everything I bargained for. I had been advised by representatives of Jefferson Beach Marina, including yourself, that our previously agreed upon resolution of an extended five year engine warranty, replacement of the worn insulation in the engine room, and detailing the engine room, would be a fair and acceptable resolution. The purpose of this email is to advise you that this is no longer the case.

I have documented 6 separate occasions that this boat has made it back to the dock without a serious mechanical problem. I have documented 24 separate occasions that the boat had a serious mechanical failure requiring a service call, having to add significant quantities of coolant, or pumping the motor up with a bicycle pump to rebuild pressure in the expansion tank.

At this juncture, I expect Jefferson Beach to move the boat to Grand Haven where it can be repaired and stored pending resolution of this controversy. Please let me know when the boat will be available for me to remove all of my personal belongings. Furthermore, I am hereby demanding rescission of our contract given the fact that Sunseeker as utterly failed to deliver a boat that conforms to our agreement. Lastly, I will be seeking reimbursement for the extraordinary expenses relating to the aborted trip to Florida including airfare, hotel rooms, and the commitment to mooring facilities in Florida.

I have struggled with these issue since the boat was delivered. Sunseeker has never been able to resolve theses problems and I have experienced nothing but utter frustration for almost a year and a half. I need to know immediately what Sunseeker/MAN/ and/or Jefferson Beach intends to do to rectify this situation. Nick - the market for your products is a small one. People talk and reputations are everything. Sunseeker needs to step up to the plate and make this right because I'm not going away. Depending upon how you handle this, I will end up either being your supporter or making it my mission in life to make sure nobody has to go through what I have.

ORIGINAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**SCOTT A. CHAPPELLE,**

      Plaintiff,

vs.

**JEFFERSON BEACH YACHT SALES, INC.,**
a Michigan corporation; **SUNSEEKER USA,
INC.**, a foreign corporation; and **SUNSEEKER
INTERNATIONAL LIMITED**, a foreign corporation,

      Defendants.

JUDGE : Duggan, Patrick J.
DECK  : S. Division Civil Deck
DATE  : 10/13/2004 @ 16:34:01
CASE NUMBER : 2:04CV74012
CMP SCOTT A CHAPPELLE V
JEFFERSON BEACH YACHT SALES INC
ET AL DH

MAGISTRATE JUDGE PEPE

FILED '04 OCT 13 P4:40
U'S DIST COURT CLERK
EAST DIST MICH
DETROIT

---

**THOMAS J. MCGRAW** (P48817)
**SEAN M. WALSH** (P48724)
**PAULA JOHNSON-BACON** (P55862)
COX, HODGMAN & GIARMARCO, P.C.
Attorneys for Plaintiff
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan  48084-5280
☎(248) 457-7000

---

## JURY DEMAND

---

    **NOW COMES** Plaintiff Scott A. Chappelle, by his attorneys, Cox, Hodgman &

Giarmarco, P.C., and hereby demands a trial by jury.

          COX, HODGMAN & GIARMARCO, P.C.

By: _____
    THOMAS J. MCGRAW (P48817)
    SEAN M. WALSH (P48724)
    PAULA JOHNSON-BACON (P55862)
    COX, HODGMAN & GIARMARCO, P.C.
    Attorneys for Plaintiff
    Tenth Floor Columbia Center
    101 West Big Beaver Road
    Troy, Michigan  48084-5280
Date:  October 13, 2004    ☎(248) 457-7000



COX
HODGMAN &
GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001